UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN M. BIRNIE and
EMALEE BIRNIE,

       Movants,                                      File No. 1:07-CV-1141

v.                                                       File No. 1:07-CV-1152

UNITED STATES OF AMERICA,          HON. ROBERT HOLMES BELL

       Respondent.
                                                                   /

**O P I N I O N**

This matter is before the Court on Movants John M. Birnie and Emalee Birnie's motions pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct their sentences. Movants filed identical § 2255 motions on November 14, 2007. (File No. 1:07-CV-1141, Dkt. No. 1; File No. 1:07-CV-1152, Dkt. No. 1.) The United States filed a response on July 8, 2008. (File No. 1:07-CV-1141, Dkt. No. 9; File No. 1:07-CV-1152, Dkt. No. 10.) Movants filed a reply on July 22, 2008. (File No. 1:07-CV-1141, Dkt. No. 11; File No. 1:07-CV-1152, Dkt. No. 12.) For the reasons that follow, Movants' § 2255 motions will be denied.

**I. Background**

On May 22, 2003, Movants were indicted in a fraudulent scheme to purchase residences owned by the U.S. Department of Housing and Urban Development (HUD) at well below fair market value and in violation of HUD guidelines. Terrance C. Hansen was

1

also indicted in this case. Hansen orchestrated the fraudulent sales to Movants from his position as the Real Estate Owned (REO) Chief in charge of handling the disposition of HUD-acquired single-family properties at the Grand Rapids, Michigan office.[1] Movants developed a relationship with Hansen after performing closing agent and Real Estate Asset Manager (REAM) duties for HUD. On April 16, 2004, Movants were found guilty of ten counts of theft of government property, ten counts of wire fraud, and one count of money laundering, in violation of 18 U.S.C. §§ 641, 1343, and 1957, respectively. (File No. 1:03-CR-143, Dkt. No. 87, 04/16/2004 Trial Tr. Vol. V at 963-68.)

On July 23, 2004, this Court sentenced both Movants to forty-one months in prison and three years of supervised release. (File No. 1:03-CR-143, Dkt. Nos. 77/78, J. 1-3.) In addition, this Court ordered the payment of $560,530.68 in restitution. (*Id.* at 5.) After the Sixth Circuit Court of Appeals remanded the sentence in accordance with *United States v. Booker*, 543 U.S. 220 (2005), this Court re-sentenced Movants to thirty months in prison. (Dkt. Nos. 126/133, 11/13/2006 Am. J. 2.) Movants have served their terms of imprisonment and were discharged from supervised release on November 23, 2009. However, because Movants' § 2255 motions were filed before the completion of their sentences, the Court must still consider the motions. *See Hampton v. United States*, 191 F.3d 695, 697 (6th Cir. 1999) ("Where a prisoner's sentence is not fully expired at the time of filing, but expires during the

---

[1] Hansen ultimately pleaded guilty to ten counts of wire fraud and ten counts of conversion of public property in connection with this scheme. (File No. 1:03-CR-143, Dkt. No. 38, 03/26/2004 Plea Agreement.)

2

litigation of the collateral attack, the proceeding does not become moot."); *see also Jones v. Cunningham*, 371 U.S. 236, 242-43 (1963) (holding that a paroled prisoner was "in custody" for purposes of § 2255).

In their § 2255 motions, Movants' contend that their sentences should be vacated, set aside or corrected due to ineffective assistance of counsel. Movants allege that counsel failed to provide effective assistance during the pretrial, trial, sentencing, and appeal phases of their case.[2]

## II. Legal Standard

A petitioner who moves to vacate his or her sentence under § 2255 must show that:

> [T]he sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack.

28 U.S.C. § 2255. To prevail on a § 2255 motion, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). A petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982). Non-constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir.

---

[2] Attorney John Karafa represented Movant John M. Birnie, while attorney Daniel Fagan represented Movant Emalee Birnie.

3

2000). A petitioner can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotations omitted)).

In addressing a motion to vacate or correct a sentence, a court should grant a hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the petitioner is entitled to no relief . . . ." 28 U.S.C. § 2255(b). In addition, "no hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

Generally, a petitioner is procedurally barred from raising claims in a § 2255 motion, even those of constitutional magnitude, to which no contemporaneous objection was made or which were not presented on direct appeal. *Frady*, 456 U.S. at 167-68; *Nagi v. United States*, 90 F.3d 130, 134 (6th Cir. 1996). The procedural default rule does not apply, however, to claims of ineffective assistance of counsel; such claims may be raised for the first time in a § 2255 proceeding, without regard to the failure to raise them on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 509 (2003).

4

In order to prevail on Movants' Sixth Amendment claims of ineffective assistance of counsel, Movants must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced Movants and deprived them of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.*

In order to show that counsel's performance was prejudicial, Movants "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Courts are not required to conduct an analysis under both prongs of the *Strickland* test if the claim can be disposed of under one prong. *Id.* at 697; *Mallett v. United States*, 334 F.3d 491, 497 (6th Cir. 2003).

**A. Ground One: Ineffective Assistance During Pretrial**

Movants argue that counsel was ineffective during the pretrial phase for failure to attend scheduled meetings with Movants, review materials provided by Movants, interview witnesses, research appropriate case law, and become familiar with HUD regulations.

5

Movants emphasize their disappointment with counsel's lack of preparation and lack of communication during the pretrial phase of the case. However, in evaluating a claim of ineffective assistance, subjective dissatisfaction carries "no weight." *United States v. Cronic*, 466 U.S. 648, 657 n.21 (1984). Rather, "the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such. If counsel is a reasonably effective advocate, he meets constitutional standards irrespective of his client's evaluation of his performance." *Id*.

Movants contend that counsel failed to meet weekly, as agreed, to discuss their defense leading up to trial. Between the two attorneys who represented Movants, counsel logged multiple in-person conferences and telephone conversations with both clients "to review documents, discuss legal and fact issues anticipated at trial, discuss defense strategies and evidence, and related matters." (Karafa Aff. ¶ 6-7; Fagan Aff. ¶ 6-7.)[3] The attorneys "exchanged numerous phone calls" to discuss information about the case "throughout the entire period of representation . . . ." (Fagan Aff. ¶ 8.) In addition, there is no evidence that a greater number of meetings with counsel would have created the reasonable probability of a different result at trial. Therefore, counsel's pretrial preparation was objectively reasonable and Movants have not shown that counsel's failure to adhere to a weekly schedule prejudiced them.

---

[3]Attorney Karafa's affidavit is Attachment A to the government's response, while attorney Fagan's affidavit is Attachment B to the government's response. (See File No. 1:07-CV-1141, Dkt. No. 9; File No. 1:07-CV-1152, Dkt. No. 10.)

Movants also argue that counsel should have reviewed the materials provided by Movants and implemented them into their trial strategy. However, "blind deference to a client's wishes, without any investigation, is unquestionably inappropriate and constitutionally ineffective." *Alvord v. Wainwright*, 469 U.S. 956, 961 (1984). Furthermore, counsel asserts that, despite repeated requests and Movants' repeated assurances, Movants never provided

> any useful exculpatory documentation . . . that would assist in any substantial way with the defense theory that the properties were purchased in significantly distressed and unmarketable condition, rehabilitated by the clients in a way that would explain the substantial disparity between the government's appraised values and the clients' purchase prices, which was essentially the explanation of the defendants regarding the charges.

(Karafa Aff. ¶ 12, Fagan Aff. ¶ 13.) These contentions are consistent with counsel's claim that "a fair amount of time" was spent "attempting to redirect [Movants'] attention to relevant matters, documents, and details responsive to the indictment allegations . . . ." (Karafa Aff. ¶ 8, Fagan ¶ 9.) Counsel's investigatory decisions are assessed for reasonableness, "applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. There is no evidence that counsel's decision to decline to use Movants' materials was objectively unreasonable or prejudicial.

Movants also contend that counsel failed to interview key witnesses prior to trial, specifically HUD contractors who would have testified that the "extra services" Movants provided under their REAM contract were "exemplary" and that the amount Movants charged for their services was less than other local REAM contractors. Movants argue that

7

such testimony would have discredited the evidence of a "special arrangement" between Movants and Terrance Hansen. However, testimony regarding the services Movants provided under their REAM contract does not relate to or excuse Movants from the fraudulent purchases of HUD properties. Therefore, Movants have not shown how the omission of such testimony prejudiced them. In addition, there is evidence that counsel attempted to secure witnesses. Counsel proposed using Movants' accountant and an independent appraiser as experts to "review and critique the government's experts" at trial. (Karafa Aff. ¶13; Fagan Aff. ¶ 14.) But those expert witnesses were never used, as Movants insisted that the testimony of such experts would harm Movants' case. (Karafa Aff. ¶ 15, Fagan Aff. ¶ 16.)

Movants also contend that counsel failed to research appropriate case law and failed to become familiar with HUD rules and regulations prior to trial. However, there is no evidence that counsel spent an inadequate amount of time reviewing case law or HUD regulations. Between their respective attorneys, Movants received 362 hours of legal assistance in the pretrial and trial phases of their case. (Karafa Aff. ¶ 26, Fagan Aff. ¶ 27.) Both attorneys demonstrated knowledge of HUD policies and procedures during trail. (See Dkt. No. 84, 04/13/2004 Trial Tr. II at 201-04, 216-18, 256-59; Dkt. No. 85, 04/14/2004 Trial Tr. III at 586-89.) Therefore, Movants have failed to show that counsel provided ineffective assistance during the pretrial stage.

### B. Ground Two: Ineffective Assistance During Trial

Movants argue that they were prejudiced because of counsel's failure to adequately cross-examine witnesses, object to misleading testimony, present applicable theories of defense, or present exculpatory evidence. However, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955) (internal quotations omitted)). Moreover, in reviewing a claim of ineffective assistance of counsel, courts should decline second-guessing an attorney's trial strategy. *Johnson v. Mitchell*, 585 F.3d 923, 938 (6th Cir. 2009).

Movants argue that counsel was ineffective for failure to sufficiently cross-examine witnesses. However, the record reflects that counsel acted reasonably. Counsel's cross-examination of witnesses resulted in well over 200 pages of combined trial transcript. Counsel elected to cross-examine every one of the government's witnesses. Responding to Movants' allegation, both attorneys "stand on the trial record which demonstrates vigorous cross examination, careful and considered tactical decisions on objections to government evidence and questioning of witnesses, and achievement of our essential goals . . . ." (Karafa Aff. ¶ 19, Fagan Aff. ¶ 20.)

Movants' contention that counsel was ineffective for failing to object to misleading testimony is also meritless. The testimony that Movants emphasize involved two government witnesses: a former Detroit HUD officer who stated that she was "not in a position to assess

9

Terry Hansen's interpretation of HUD policy," (Dkt. No. 84, 04/13/2004 Trial Tr. Vol. II at 211), and a former Grand Rapids HUD officer who stated that HUD "can sell the properties for less if we feel it is in the best interest of the agency." (Dkt. No. 85, 04/14/2004 Trial Tr. Vol. III at 588.) Movants claim that counsel should have objected to this testimony because it "expanded the jury's focus beyond the allegations in the indictment." However, Movants' speculative statement does not show prejudice and does not provide a basis for objection. In addition, this testimony was offered during counsel's cross-examination of these witnesses and, as a result, counsel was in no position to object. Thus, Movants have not shown how counsel could have been ineffective.

Movants also argue that counsel failed to present applicable theories of defense, particularly the defense of entrapment by estoppel. Entrapment by estoppel is an affirmative defense triggered when "a government official has assured a defendant that certain conduct is legal before the defendant engages in the conduct." *Northland Family Planning Clinic v. Cox*, 487 F.3d 323, 342 (6th Cir. 2007). For the defense to be available, the Court must conclude that:

> (1) a government agent announced that the charged criminal conduct was legal; (2) the defendant relied on the agent's announcement; (3) the defendant's reliance was reasonable; and (4) given the defendant's reliance, prosecution would be unfair.

*United States v. Triana*, 468 F.3d 308, 316 (6th Cir. 2006) (citing *United States v. Levin*, 973 F.2d 463, 468 (6th Cir. 1992)). Movants rely on the statement by Terrance Hansen that the fraudulent sales were "approved by Philadelphia," the location of HUD's national office.

Movants also rely on the deeds transferring title of the properties to them because the deeds were signed by eight different HUD employees. However, even if those two factors amount to an affirmative representation that the sales were legal, Movants' reliance was unreasonable. Movants worked as HUD contractors for many years. Hansen himself testified that "both the Birnies were real estate brokers who were knowledgeable about the proper procedure by which to purchase a home from HUD because they had participated in such purchases." (File No. 1:03-CR-143, Dkt. No. 113, *United States v. Birnie*, Nos. 04-2070, 04-2401, slip op. at 5 (6th Cir. Aug. 24, 2006).) Therefore, counsel was not ineffective for failure to raise this defense at trial.

In addition, Movants claim that counsel should have raised a "good faith" defense to the wire fraud charges because Movants believed the information wired was true. However, Movants fail to provide evidence that would support this conclusion and warrant a good faith defense. Movants also claim that counsel should have raised an "impossibility" defense because 18 U.S.C. § 641 does not apply to real property. There is no support for this conclusion in the statute. "If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade." *Cronic*, 466 U.S. at 657. Therefore, counsel's failure to raise these defenses was objectively reasonable.

Movants contend that counsel failed to present exculpatory evidence showing that they were ignorant victims of the fraudulent scheme. Counsel's decisions in presenting a

defense are afforded heavy deference. Indeed, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91. Movants have not shown that counsel acted unreasonably in their presentation of evidence. In fact, as the Court has discussed, counsel's affidavits reflect a frustration with Movants' inability to provide allegedly "exculpatory" evidence that was continually requested and yet never received. (Karafa Aff. ¶ 9, 10, 12; Fagan Aff. ¶ 10, 11, 13.) Therefore, despite any disagreements Movants have with counsel's trial strategy, Movants have not overcome the presumption that counsel's conduct amounted to objectively reasonable representation.

**C. Ground Three: Ineffective Assistance During the Court's Imposition of Restitution**

Movants argue that counsel was ineffective for failure to prepare Movants to respond to the restitution imposed following the reading of the verdict at trial. Movants assert that counsel wrongly informed them that restitution would be imposed at sentencing. However, Movants confused the post-verdict discussion of forfeiture for restitution. (See Dkt. No. 87, 04/16/2004 Trial Tr. V at 971-973.) Restitution was in fact imposed at sentencing, as counsel promised. (Dkt. No. 79, Sentencing Tr. at 61.)

Movants also argue that counsel should have objected to the restitution imposed due to Movants' inability to pay. However, the Mandatory Victims Restitution Act (MVRA), 18

12

U.S.C. § 3663A, "requires mandatory restitution to victims of certain crimes, including offenses against property under Title 18 and including any offense committed by fraud or deceit." *United States v. Schulte*, 264 F.3d 656, 661 (6th Cir. 2001). Because the restitution was imposed under the MVRA, the imposition of restitution is mandatory "without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). Therefore, counsel was not ineffective for failure to object to restitution based on Movants' inability to pay.

### D. Ground Four: Ineffective Assistance on Appeal

Movants argue that their attorneys were ineffective on appeal for failure to communicate with and solicit input from Movants during the preparation of the appeal. However, "only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Fautenberry v. Mitchell*, 515 F.3d 614, 642 (6th Cir. 2008) (quoting *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002)). Movants only raise one issue in their petition that counsel did not argue on appeal, namely, that real estate is not subject to conversion, and that therefore, Movants cannot be guilty of receiving stolen property under 18 U.S.C. § 641. When explaining the jury instructions in this matter, the Court stated that conversion entails a "wrongful or willful taking" and that "[a] transfer of title is the taking [sic] as that word would be used in the instructions." (Dkt. No. 61, Jury Instructions 14.) Therefore, because real estate is subject to conversion, Movants' claim is meritless and would have had no effect on the result of the

13

appeal. *See McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004) ("Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal.")

### IV. Conclusion

The files and records in this case conclusively show that Movants are entitled to no relief under § 2255. Accordingly, for the reasons stated herein, Movants' motions to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 must be denied.

An application for a certificate of appealability will also be denied because Movants cannot make a substantial showing of the denial of a federal constitutional right with respect to any of their claims. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

An order consistent with this opinion will be entered.


Dated: <u>January 13, 2010</u>  /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE